the matter comes in court, then the court will make such application as equity and justice require.

In the present case I am unable to find from the record that the complaining creditors made any application of the payments they received at the time the payments were made nor subsequently, and the matter has now come into court. Consequently the situation has arisen which, as stated in the case just cited, takes the power of application out of the hands of the creditor and devolves upon the court the duty of making the application in accordance with principles of equity and justice. No reason is advanced, nor does any appear to me, for holding that the application as made by the referee was not in accordance with such principles.

The motion to confirm the report of the referee is therefore granted. Settle order on notice.

---

## BUTTERWORTH et al. v. KEELER et al.

(Supreme Court, Appellate Division, First Department. July 9, 1915.)

1. CHARITIES ⬤⟿21—SPECIFICATION OF BENEFICIARY—NECESSITY—STATUTES.
A trust for the "establishment of a school for girls" in a town is invalid for lack of definite beneficiaries, unless covered by Personal Property Law (Consol. Laws, c. 41) § 12, providing that no gift to religious, educational, charitable, or benevolent uses shall be deemed invalid by reason of the indefiniteness of the beneficiary named in the instrument creating the same.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 44–50; Dec. Dig. ⬤⟿21.]

2. CHARITIES ⬤⟿21—BEQUEST IN TRUST—VALIDITY.
Under Personal Property Law, § 12, providing that no gift to religious, educational, charitable, or benevolent uses shall be invalid for the indefiniteness of the beneficiary, where testatrix gave half her residuary estate intrust for the "establishment of a school for girls in the town of N. S.," testatrix being a widow advanced in years, without children, having lived and owned property a long time in the town, her neighbors being mainly poor wage-earners, and the facilities for public education of the town · being meager, there being other unquestionable charitable bequests in the will, the trust was valid as having been intended by the testatrix as a charity, since the construction of a will, which is susceptible of more than one, that sustains the trust and devotes the fund to purposes permitted by law and the good of humanity, .should be preferred by the courts.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 44–50; Dec. Dig. ⬤⟿21.]

3. CHARITIES ⬤⟿23—BEQUEST IN TRUST—PROVISION FOR DETAILS.
The testatrix, in giving a fund to her executors for the establishment of a girls' school, could leave the details of the plan, such as the description of the kind of .school, whether elementary or advanced, general, special, or technical, sectarian or nonsectarian, to the discretion of her trustees, without invalidating the gift.

[Ed. Note.—For other cases, see Charities, Cent. Dig. § 43; Dec. Dig. ⬤⟿23.]

4. CHARITIES ⬤⟿26—SUSPENSION OF ALIENATION—WAIVER OF OBJECTIONS.
Where testatrix's will gave personalty in trust to build a Catholic church, the sum to be held by the trustee for three years, and, if no action

was taken during such period toward building a church, then to the trustee absolutely, and the only parties interested in invalidating the gift did not challenge it, either by answer, argument, or request for findings, the disposition might be held valid on the ground that charitable bequests are no longer subject to the rule prohibiting the suspension of the power of alienation for a term of years, since the court should not be astute to award parties property not claimed by them.

[Ed. Note.—For other cases, see Charities, Cent. Dig. § 15; Dec. Dig. ⊚⇒26.]

5. Reference ⊚⇒83—Jurisdiction.

The jurisdiction of the referee is limited to the determination of the issues in the action, and a matter not mentioned in the pleadings or the order of reference cannot be dealt with in his report.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 121–126; Dec. Dig. ⊚⇒83.]

Appeal from Judgment on Report of Referee.

Action by George F. Butterworth and another, as executors, etc., of Cornelia Storrs, deceased, against Charles E. Keeler and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

The following is the opinion of Referee Edward F. Sprague:

The decedent by her will gave one-half of her residuary estate to her executors, "in trust, nevertheless, to be used and devoted by them to the establishment of a school for girls in the town of North Salem." The amount of this gift appears to be approximately $75,000. The only serious question in the case is concerned with the validity of this gift.

[1, 2] The gift is undoubtedly invalid, unless governed by section 12 of the Personal Property Law, which provides that "no gift, grant, or bequest to religious, educational, charitable or benevolent uses, which shall in other respects be valid under the laws of this state, shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same." The inquiry here must be whether this is a gift to "religious, educational, charitable or benevolent uses." The language of the statute above cited has been considered by the Court of Appeals in five distinct cases within the past six years. Matter of Shattuck, 193 N. Y. 446, 86 N. E. 455; Manley v. Fiske, 139 App. Div. 665, 124 N. Y. Supp. 149, affirmed without opinion 201 N. Y. 546, 95 N. E. 1133; Matter of Robinson, 203 N. Y. 380, 96 N. E. 925, 37 L. R. A. (N. S.) 1023; Starr v. Selleck, 145 App. Div. 869, 130 N. Y. Supp. 693, affirmed without opinion 205 N. Y. 545, 98 N. E. 1116; Matter of Cunningham, 206 N. Y. 601, 100 N. E. 437. In all these cases, except Matter of Shattuck, the testamentary disposition was held valid. In the Shattuck Case the gift was to the executor, "in trust, however, the rents, profits and income thereof to be expended by. him annually and to be paid over to religious, educational or eleemosynary institutions as in his judgment may seem advisable." The court, construing chapter 701 of the Laws of 1893 (now section 12 of the Personal Property Law), held that the intention of. the Legislature in passing the act of 1893 was to save to the public charitable gifts made in trust to uncertain and indefinite beneficiaries; that gifts for the benefit of private institutions or individuals were not intended to be included within its provisions; that to constitute a charity the use must be public in its nature; that an educational institution is not necessarily a public or charitable institution; and that under the will of the testatrix the trustee could lawfully make a disposition of the proceeds of the trust fund which would be in whole or in part private and individual and not public and charitable. For these reasons the gift in the Shattuck Case was held invalid.

Applying this line of reasoning to the present case, it appears at once that these trustees have no discretion in selecting the object of the testatrix's bounty. The bequest is "to be used and devoted by them to the establishment

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of a school for girls in the town of North Salem." The sole question here is whether this is a charitable gift for the benefit of the public. Mrs. Storrs, the testatrix, was a woman somewhat advanced in years, a widow having no children or descendants. She had been long a resident of North Salem, owning several pieces of real estate in the town. Her neighbors were mainly persons of narrow means, belonging to the wage-earning class. The facilities for public education were meager. Mrs. Storrs was a woman of charitable impulses. In the fifth clause of her will she provides for a small contribution towards the building of a Roman Catholic Church, and she gives one-half of her residuary estate to the New York Skin and Cancer Hospital. I see no escape from the conclusion that this proposed school for girls was intended as a charity. The words of Judge Chase in Matter of Robinson, 203 N. Y. 380, 388, 96 N. E. 925, 927, 37 L. R. A. (N. S.) 1023, are peculiarly appropriate: "It is doubtless true that the paragraph of the will by which the trust is attempted to be created is susceptible of more than one construction, but a construction which is fairly within the rules of law, and that sustains the trust and devotes the fund included therein to purposes permitted by law and to the good of humanity, should be preferred."

Counsel for defendants contend that it would be competent for the trustees under Mrs. Storrs' will to conduct a private school for profit. But she makes no disposition of any such possible profit. It is argued by one of the counsel that the trustees might lawfully apply the profit to their own use. But it is hardly conceivable that Mrs. Storrs should have desired or expected that a New York lawyer and a business man residing in New Jersey and doing business in New York should establish a girls' school in a small town in Westchester county for their own personal profit, and it is quite clear that the profit would not belong to them, if they made any. As I read the will, the only rational construction is that this was a charitable gift. If so, then it was a gift for public charity; the beneficiaries being the girls of the town of North Salem.

[3] It is further objected that the will is not sufficiently definite in prescribing the kind of school to be established, whether elementary or advanced, general, special, or technical, sectarian or nonsectarian. But these are details which the testatrix intrusted to the discretion of her trustees, as she had the right to do. A very acute and exhaustive analysis of the New York law of charity will be found in the case of Utica Trust & Deposit Co. v. Thompson, 87 Misc. Rep. 31, 149 N. Y. Supp. 392. While the facts in that case do not closely resemble those now under consideration, I have found Judge Emerson's reasoning and conclusions of great assistance. I have not regarded the case of Attorney General v. Soule, 28 Mich. 153, as a controlling authority. It is cited by Judge Chase in his opinion in the Shattuck Case, but was quite unnecessary to that decision, and is much more stringent in its limitations upon charitable bequests. I am of the opinion that it does not state correctly the law of our state upon this subject.

[4] The complaint also questions the validity of clause "Fifthly" of the will, whereby certain real and personal property is given to James W. Christopher, "in trust, nevertheless, for the purpose of building a Catholic church, the same to be held by the said James W. Christopher for the period of three years, and if no action is taken during said period towards building a church, then * * * to the said James W. Christopher absolutely." The value of this gift is only about $550. If I am correct in sustaining the residuary clause, the only parties interested in avoiding this gift are the New York Skin and Cancer Hospital, and the people of the state representing the school trust; but neither of these parties has challenged the validity of this clause, either by way of answer, or of argument, or of request for findings. Plaintiffs' counsel contend in their brief that the gift is valid on the ground that since the statute above cited charitable bequests are no longer subject to the rule which prohibits the suspension of the power of alienation for a term of years. With some hesitation I accept this conclusion, and hold the disposition valid. The court should not be astute to award to parties property which they do not claim.

[5] It appeared upon the trial that plaintiffs desire to be relieved from responsibility as trustees of the school fund, and have arranged with the

Attorney General that the fund shall be paid over to the supervisor of the town of North Salem and the district superintendent of schools of the supervisory district in which said town is located, pursuant to article 19 of the Education Law; and I am requested to order judgment accordingly. I do not question the wisdom and propriety of this course, but I find nothing in the order of reference authorizing me to deal with the subject. It is not referred to in the pleadings, and my jurisdiction as referee is limited to the determination of the issues in the action.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

C. H. Briscoe, of New York City, for appellants.

H. W. Taft and R. P. Beyer, both of New York City, for respondents.

PER CURIAM. Judgment affirmed, with costs, on the opinion of the referee. Order filed.

---

MERRIHEW v. PARROTT et al.   (No. 135/42.)

(Supreme Court, Appellate Division, Third Department.   July 1, ᵇᵃ᱁᱁)

1. LIENS ⬅➡7—LIEN ON REALTY—BASIS.
   One who increases the value of realty by the labor and materials he bestows on the buildings thereon has an equitable lien t⬝⬝ ⬝ ⬝⬝ ⬝
   [Ed. Note.—For other cases, see Liens, Cent. Dig. §§ 2⬝-⬝3⬝, Dec. Dig. ⬅➡7.]

2. DESCENT AND DISTRIBUTION ⬅➡129—LIABILITY OF HEIRS—EQUITABLE LIEN.
   Where a surviving partner transferred firm property to a servant, taking back a secret agreement for reconveyance, one-half of which property was later determined to belong to the heirs of his deceased partners, and the servant purchased a farm with half of the property and engaged the plaintiff to repair the buildings, which was done, plaintiff, having knowledge of the transfer to the servant, but not of the secret agreement, could enforce an equitable lien against the property in the hands of the heirs, to whom the surviving partner, after reconveyance to him by the servant, voluntarily conveyed the property, since it would be inequitable that the surviving partner's grantee should receive the farm as a gift, leaving plaintiff without compensation for his improvements.
   [Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. § 471; Dec. Dig. ⬅➡129.]

3. DESCENT AND DISTRIBUTION ⬅➡138—LIABILITY OF HEIRS—AVOIDANCE OF MULTIPLICITY OF SUITS.
   A surviving partner transferred property to his servant, with a secret agreement of reconveyance, one-half of which property was firm assets. With half the property the servant bought a farm and engaged plaintiff to improve the buildings. Plaintiff had knowledge of the transfer of the property to the servant, but not of his agreement to reconvey. Thereafter the servant reconveyed to the surviving partner, who voluntarily conveyed to his heirs, who were also heirs of the deceased partners. The grantor was incompetent at the time of such conveyance. Plaintiff sued the grantees in the partner's lifetime to enforce an equitable lien on the property. Held that, after the partner's death, a court of equity could entertain the action against the grantees as heirs of the partner, as one enforcing a liability against a decedent's property in the hands of his heirs by descent, in order to avoid a multiplicity of suits.
   [Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. § 495; Dec. Dig. ⬅➡138.]

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes